UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DENNIS MURRAY,

    Plaintiff,

    v.

WASHINGTON STATE
DEPARTMENT OF ECOLOGY, *et al.*,

    Defendants.

NO.  CV-06-142-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 48); Defendants' Motion for Partial Summary Judgment (Ct. Rec. 54); and Plaintiff's Motion to Strike (Ct. Rec. 80).  A hearing was held on the motions on January 17, 2008, in Spokane, Washington.  Plaintiff was represented by Stephen Matthews.  Defendants were represented by Dannette Allen.

## BACKGROUND

Plaintiff was an employee of Defendant Washington State Department of Ecology until he was terminated on May 28, 2004.  Plaintiff alleges that the Department of Ecology terminated him for exercising his First Amendment rights and is seeking damages under 42 U.S.C. § 1983.  He is also asserting claims under the Washington Public Records Act and Washington state law.

Defendant James Bellatty is the Water Quality Section Manager for the Department of Ecology.  Defendant David Knight was Plaintiff's supervisor from

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1**

the time he was hired until he was terminated, except from September 2001 to October 1, 2003, when Plaintiff was supervised by Nancy Weller.[1] Defendant Megan White is the Water Quality Program Manger for the Department and Defendant Polly Zelm is the Deputy Director of the Department.

Generally, federal courts do not become involved in employment disputes, even if the employer is a governmental agency. There are appeals processes to determine whether the discipline or termination was justified. Courts do become involved, however, where the termination violated public policy, was discriminatory, or violated a right protected by the United States Constitution.

In this case, Plaintiff alleges that Defendants disciplined and fired him based on speech made as a private citizen on a matter of public concern.[2] Plaintiff also alleges that Defendants imposed an unconstitutional restraint on his speech and association rights. In contrast, Defendants assert that Plaintiff was disciplined and terminated for work-related deficiencies and failure to follow instruction. Defendants justify any restraint on his speech as necessary to permit the Department of Ecology to carry out its responsibilities to the public.

Plaintiff received a two-week suspension without pay in January 2004 and was terminated in May 2004. Both the suspension and termination were preceded by pre-disciplinary letters in which Defendants set forth the reasons they were considering discipline and termination.

On June 11, 2003, Plaintiff received a Letter of Reprimand written by

---

[1]Nancy Weller died in 2003, and Plaintiff has named the Estate of Nancy Weller as a Defendant.

[2]The alleged speech consists of over 30 e-mails sent by Plaintiff over a span of a year, and also includes meetings Plaintiff had with certain individuals.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2**

Defendant Megan White.[3]  In the letter, Ms. White addressed the following issues: Plaintiff's disregard and/or contradiction of directives from his supervisor and section manager;  Plaintiff's management of the TMDL/SIS submittal report and improper follow up; Plaintiff's failure to properly manage the grant project; Plaintiff's continuing conduct to discredit and subvert the Stevens County Conservation District even when directed to stop doing so; and Plaintiff's failure to implement the Performance Improvement Plan.[4]

On October 28, 2003, Plaintiff received a Pre-Disciplinary Letter written by Defendant Polly Zehm.[5]  In the letter, Ms. Zehm addressed the following issues: Plaintiff's failure to follow the Performance Improvement Plan by submitting all written materials to his supervisor for review before mailing; Plaintiff's failure to courtesy copy e-mails; and Plaintiff's continued contact with members of the TMDL Advisory Group.

On January 9, 2004, Plaintiff received a Disciplinary Letter, written by Polly Zehm, in which Plaintiff was notified that he was being issued a two-week suspension without pay for neglect of duty, insubordination, gross misconduct, and

---

[3]Ct. Rec. 62, Ex. 1, p. 2-5.

[4]In January 2003, Defendants conducted a performance evaluation of Plaintiff.  The performance evaluation developed a Performance Improvement Plan (PIP) which directed Plaintiff to (1) submit all written materials sent to external recipients to his supervisor before the material was sent; (2) internally copy all e-mails to his supervisor; (3) refrain from signing any external documents that made statements or commitments that would be interpreted as Department of Ecology statements or commitments; and (4) attend training sessions to improve presentation skills.  Plaintiff signed his performance evaluation on January 10, 2003.  (Ct. Rec. 62, Ex. 1, pp. 27-30).

[5]Ct. Rec. 62, Ex. 2.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 3**

willful violation of Department of Ecology rules and regulations.[6]  Ms. Zehm concluded that Plaintiff failed to follow directives from his supervisors, namely, that he failed to submit all written material to his supervisor before mailing, failed to courtesy copy e-mails to his supervisor; and continued to have contact with members of the TDML Advisory Group.

On March 22, 2004, Plaintiff received a second pre-disciplinary letter from Polly Zehm, informing him that the Department was considering taking formal disciplinary action, including dismissal from his current position.[7]  The letter referred to e-mails that were written by Plaintiff and also alleged that Plaintiff was misusing state resources by sending e-mails from his work computer.

On May 12, 2004, Plaintiff received a letter from Polly Zehm, informing him that he was being terminated from his position at the Department of Ecology for the following reasons: sending e-mails messages from his computer during working hours to TMDL Advisory Group after his duties were changed and after being instructed to have no more contact with members of the TMDL Advisory Group; violating policy prohibiting private use of state resources, insubordination and gross misconduct; sending negative e-mails from an Ecology computer to TMDL Advisory Group members, the EPA agency regarding the Stevens County Conservation District, supervisor, section manager, and other Ecology employees during regular work hours; willfully and flagrantly undermining, interfering and obstructing the Department's TMDL plan; violating the Department's Code of Conduct and neglect of duty; and failing to copy e-mails to supervisor as directed.[8]

The alleged speech at issue involved two separate, but somewhat related job responsibilities of Plaintiff.  The first responsibility involved the management of

[6]Ct. Rec. 62, Ex. 3.

[7]Ct. Rec. 62, Ex. 4.

[8]Ct. Rec. 62, Ex. 7

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

the TMDL process and the second involved Plaintiff's administration of a grant received by the Stevens County Conservation District ("SCCD").

Plaintiff was hired as a TMDL Specialist.[9]  His responsibilities included working with the TMDL Advisory Group.  The purpose of the Advisory Group was to provide public input to the Department and help Plaintiff formulate a report on the problem of bacteria in the Colville River and how to remedy this problem.[10] There were eighteen members of the TMDL Advisory Group members,[11] which included Plaintiff, Ron Rose, Merrill Ott, Scott Barr, Tony Delgado and Wes

---

[9]The Federal Clean Water Act mandates that states establish Total Maximal Daily Loads (TMDL) for water bodies that do not meet water quality standards. TMDL's are completed by state agencies and submitted to the Environmental Protection Agency (EPA) for approval.  Approval by the EPA consists of reviewing the TMDL report with a "checklist" that explains the ways in which the TMDL complies with federal regulations.  After the checklist is completed, the program manager briefs EPA management on the TMDL.  If the TMDL meets EPA's standards for approval, the EPA project manager prepares an approval letter.

[10]The report regarding the bacteria in the Colville River is referred to as the TMDL report.  The acronym TMDL refers to the Total Maximum Daily Load of bacteria or other pollutants the river can reasonably carry.

[11]The membership also included members of the Stevens County Cattleman's Association, a PUD Board Supervisor, an employee of the Stevens County Conservation District, a member of the Washington State Cattleman's Association, a member of the Stevens County Federal Land Advisory Board, a member from the United States Forest Service, and a hydrologist from the Colville National Forest (Ct. Rec. 59, p. 21).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5**

McCart.[12]  The majority of the members, including Plaintiff, were Stevens County landowners.  *Id.*  The TMDL Advisory Group met periodically.  These meetings were planned and facilitated by the Department of Ecology staff.

The TMDL process involved three phases: Phase one, which included a technical study; Phase Two; which included a submittal report, incorporating the technical study and setting forth a summary implementation statement (SIS)[13]; and Phase Three, which included preparing a Detailed Implementation Plan (DIP).

The Advisory Group met from June 2002 until October 2002.  Plaintiff completed the Draft Colville Fecal Coliform TDML report in October 2002.  The draft version went out for public comment from November 21, 2002, through January 4, 2003.  After public comments were received, Plaintiff prepared the final Draft of the Colville Fecal Coliform TMDL report.  In doing so, Plaintiff made substantive changes to the report without notifying his supervisors.  The changes altered the Stevens County Conservation District's (SCCD) statement of involvement and eliminated the SCCD from future monitory/implementation strategy of the TMDL.  Plaintiff submitted his final Draft TMDL to the EPA for approval, without notifying his supervisor of his changes.

The SCCD became aware of Plaintiff's changes and complained to the Department of Ecology.  Plaintiff and his supervisors met on May 15, 2003.  His supervisor amended the report and resubmitted the amended report to the EPA.  The report was approved by the EPA on July 3, 2003.  Plaintiff was not happy about his supervisor's changes. He believed the report contained false information and the changes were made in violation of the public disclosure laws.  Beginning in July 2003 until he was terminated, Plaintiff communicated his displeasure and

---

[12]Merrill Ott and Tony Delgado are also Stevens County Commissioners.

[13]The SIS is a general outline of the activities required to implement the TMDL and achieve water quality standards.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

views regarding the Department's approved Colville Fecal Coliform TDML report with staff members of the EPA, as well as various members of the TMDL Advisory Group.

Plaintiff's job responsibilities also included being the Project Manager of the Colville River Health Grant that had been awarded to the SCCD. Beginning in January 2003, Plaintiff and Claudi Michalke, an employee at the SCCD, began to disagree regarding the management of the grant. Plaintiff cut off SCCD's funding for monitoring under the grant in February 2003. As a result, on March 11, 2003, a meeting was held and attended by SCCD, Plaintiff, and Nancy Weller, Plaintiff's supervisor. Plaintiff was unhappy with the outcome of the meeting. Also, in April, 2003, Plaintiff wrote a negative assessment of the SCCD's performance of the grant. It was after this meeting that Plaintiff amended the TDML report.

On May 8, 2006, Plaintiff filed his complaint in the Eastern District of Washington, alleging violations of the First Amendment and state law claims for retaliation, wrongful discharge in violation of public policy, and for negligent infliction of emotional distress. He also brought a claim under the Washington State Public Records Act.[14] Both parties now move for partial summary judgment.

## DISCUSSION

### 1.    Motions for Partial Summary Judgment

#### A.  Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no

---

[14]At the hearing, Plaintiff orally confirmed that this claim should be dismissed in light of Defendant's argument that the claim is barred by the Eleventh Amendment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. Univ. of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### B.    Plaintiff's First Amendment Claims

Plaintiff is asserting two types of First Amendment claims. First, he asserts that he was retaliated against because of protected speech and that his right to associate was violated by Defendants—a hybrid speech/association claim. Second, Plaintiff asserts that Defendants imposed an impermissible prior restraint on his speech.

### 1.    Hybrid Speech/Association Claim

In *Hudson v. Craven*, the Ninth Circuit held that a hybrid speech/association

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1    claim, such as the one Plaintiff is alleging, should be evaluated using the First

2    Amendment balancing test established in *Pickering*.[15]  403 F.3d 691, 698 (9th Cir.

3    2004).  Under this analysis, Plaintiff must show: 1)  he was engaged in

4    constitutionally protected speech; 2) his employer took adverse employment action

5    against him; and 3) his speech was a "substantial or motivating" factor in the

6    adverse action.[16]  *Freitag v. Ayers*, 468 F.3d 528, 542-43 (9th Cir. 2006).

7    Constitutionally protected speech occurs when an employee speaks "as a citizen on

8    a matter of public concern."  *Connick v. Meyers*, 461 U.S. 138, 146-47 (1983).  If

9    an employee cannot show that he spoke as a citizen on a matter of public concern,

10   the employee has no First Amendment cause of action based on his or her

11   employer's reaction to the speech.  *Id.* at 147.  If he can, the employer has the

12

13          [15]*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

14          [16]There is no dispute that Plaintiff suffered an adverse employment action.

15   He was suspended without pay for two weeks and eventually terminated.  In the

16   words of the Ninth Circuit, "This is about as adverse as it gets."  *Marable v.

17   Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (noting that an adverse employment

18   action was taken where employer accused employee of misconduct, conducted a

19   disciplinary hearing, and suspended employee without pay).

20          Likewise, to the extent Plaintiff is relying on the identified speech set forth

21   in the disciplinary letters, there is no dispute that Plaintiff's speech was a

22   substantial or motivating factor in the adverse action.  Defendant identified the

23   speech at issue in the disciplinary proceedings and it was clear that the speech was

24   a substantial or motivating factor in the suspension and ultimate termination of

25   Plaintiff.  To the extent Plaintiff is relying on general statements that he expressed

26   concern about the grants or the TDML process without identifying the particular

27   speech at issue, Plaintiff has not met his burden of showing that that particular

28   speech was a motivating or substantial factor in the adverse action.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9**

burden of showing that its interest in the effective and efficient fulfillment of its responsibilities to the public outweighs the employee's First Amendment rights. *Pickering*, 391 U.S. at 568.  In the alternative, the employer can show that it would have reached the same decision even in the absence of the employee's protected speech.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

### a.    Whether Plaintiff Engaged in Protected Speech

Whether particular speech is constitutionally protected is a question of law, not fact.  *Connick*, 461 U.S. at 148 n.7; *Marable v. Nitchman*, 511 F.3d 924, 930 (9th Cir. 2007).

Both parties framed their arguments regarding whether Plaintiff engaged in protected speech in generalized terms.  Defendants contend that none of Plaintiff's speech is protected, while Plaintiff asserts that all of his speech is protected.  Given the vast record the parties submitted in support of their respective positions, this approach was not necessarily helpful.  At oral argument, the Court inquired of Plaintiff's counsel regarding the specific instances of speech that he maintained were protected.  His counsel responded that all of his speech was protected, but specifically the speech referenced in the disciplinary proceedings.  On January 18, 2008, Plaintiff's counsel filed a response where he identified specific items in the record, along with the disciplinary letters mentioned in argument, as evidence of protected speech (Ct. Rec. 84).

The Court believes the proper course of action is to look at these instances of speech individually and determine whether Plaintiff was speaking as a citizen on a matter of public concern.  If the Court determines that none of the identified speech meets both of these elements, the inquiry ends.  If the Court determines Plaintiff engaged in protective speech, further inquiry is necessary under the *Pickering* and/or *Mt. Healthy* analysis.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10**

### i.    Whether Plaintiff was Speaking Pursuant to his Official Duties or as a Private Citizen

In order to show that he was engaged in protected speech, Plaintiff must establish that when engaging in the speech, he was speaking as a private citizen.  In determining whether Plaintiff has met his burden, the Court undertakes a practical inquiry into the tasks of the employee and asks whether the speech was made pursuant to the employee's official duties.  *See Marable*, 511 F.3d at 932-33.

Plaintiff was classified as an Environmental Specialist III.  This position description was defined as follows:

> Serves as the staff environmental specialist who independently with little direction and supervision acts as the section's Water Quality Program Total Maximum Daily Load (TMDL) specialist.  This position will conduct the program's TMDL process and serve as the regional contact for TMDL activities in various watersheds within the Eastern Region.[17]

The following is a breakdown of Plaintiff's official duties:

1.    This position independently performs tasks essential to the agency's TMDL Program including: Nonpoint Source TMDL Implementation Plan Development; Monitoring the effectiveness of implemented TMDLs through site inspections, review of monitoring data and potential special studies coordination with EAP on TMDL development; and, serves as the Waster Quality Programs representative to the 2514 process with primary TMDL basins (50%).

2.    Works independently on developing the regions watershed-based priority list of proposed TMDLs.  This would include development of a draft list of waterbodies needing TMDLs, participating in the public involvement meetings, and responding to comments on the draft TMDL list.  This function would also require the evaluation of water quality monitoring data to use as the technical basis for the list (25%).

3.    Works with local governments to establish partnerships on select TMDL projects.  Provides technical review and assists local governments on the development of implementation strategies for TMDLs (10%).

4.    Works with the Attorney General's Office on appeals of completed TMDLs.  Would serve as an expert witness regarding the technical information used in developing and implementing approved TMDLs (10%).

5.    Other duties as required (5%).

*Id.*

---

[17]Ct. Rec. 60, Ex. 2.  The State of Washington Classification Questionnaire (Position Description) was signed by Plaintiff on October, 31, 2001.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11**

It is undisputed that at least from the time he was hired until sometime in July 2003, it was within Plaintiff's official duties to communicate with the TMDL Advisory Board regarding issues having to do with the Colville River watershed. The June 11, 2003, Letter of Reprimand identified speech and conduct that was directly related to Plaintiff's official duties.[18]  The Court finds that to the extent that Plaintiff's speech was a motivating or substantial factor in the issuance of the letter, the speech was made pursuant to his official duties and thus, not entitled to First Amendment protections.  *See Garcetti v. Ceballos*, 126 S.Ct. 1951, 1959-60 (2006) (holding that the employee's First Amendment claim failed because "[w]hen he went to work and performed the tasks he was paid to perform, [the employee] acted as a government employee" as opposed to a citizen for purposes of the First Amendment).

What complicates the analysis, however, is the fact that after July 2003, Plaintiff was replaced by Karin Baldwin as the TMDL liaison and was directed to have no further contact with the TMDL Advisory Group.  After this time, Plaintiff had no official duties that involved communicating with the TMDL Advisory Group.  Even so, it is not logical to assume that after this date, Plaintiff could engage in speech having to do with the Colville River watershed as a private citizen while continuing to be an employee of the Department of Ecology.  This is especially true where, as here, Plaintiff sent many of the e-mails at issue from the Department's computers using his Department e-mail account and signed the e-mails as a Department of Ecology employee.

### ii.    Whether Plaintiff was Speaking on a Matter of Public Concern

Determining whether speech involves a matter of public concern entails an inquiry into the "content, form, and context of a given statement, as revealed by the

---

[18]Ct. Rec. 62, Ex. 1, p. 2-5.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12**

whole record." *Connick*, 461 U.S. at 146-47. If some part of the communication addresses an issue of public concern, the First Amendment's protections are triggered even though other aspects of the communication do not qualify as a public concern. *Id.* at 149. Some inaccuracy in the content of the speech must be tolerated. *See Pickering*, 391 U.S. at 570-72. An employee's motivation and the audience chosen for the speech are relevant to the public-concern inquiry. *Gilbrook v. City of Westminster*, 177 F.3d 839, 866 (9th Cir. 1999) (citations omitted).

"Private speech that involves nothing more than a complaint about a change in the employee's own duties may give rise to discipline without imposing any special burden of justification on the government employer." *Hudson*, 403 F.3d at 699 (*quoting United States v. National Treasury Employees Union*, 513 U.S. 454, 466 (1995)). Matters of public concern typically involve "government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). "[P]ublic concern is something that is a subject of a legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *Id.* at 83-84.

"In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest . . . may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 925 (9th Cir. 2004).

### iii.    Analysis of Identified Speech

In conducting the analysis of whether Plaintiff engaged in protected speech, the Court makes the following observations.

First, there are a number of inconsistencies throughout Plaintiff's pleadings.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13**

For instance, in his Declaration in Opposition to Defendants' Motion for Partial Summary Judgment, Plaintiff states that the original advisory group met from February 2002 until October 2002.[19]  Plaintiff testifies that the group never met as the official advisory group after October 2002.  *Id.*  Based on this, Plaintiff contends that he could not have engaged in any protected speech with the advisory group because they were not in existence.  On the other hand, replete throughout Plaintiff's pleadings, Plaintiff consistently states that he engaged in protected speech when he communicated with members of the advisory group after the TMDL report was amended in the spring of 2003.

Moreover, in his response to Zehm's March 22, 2004 letter regarding the July 24, 2003, meeting, Plaintiff explains that "*[u]pon the Stevens County commissioners reviewing the RCWs and me reviewing Ecology policies on holding meetings with public groups, yes* the advisory group *determined that they had the right to meet anytime and anywhere they wished and the advisory group did meet on July 24, 2003.*[20]  Similarly, on July 16, 2003, Plaintiff issued a letter on Department of Ecology's letterhead that was addressed to "Advisory Group Members."[21]  In February 2004, Plaintiff sent an e-mail to Laurie Mann, an employee of EPA, asking her to meet with the TMDL advisory group.  Likewise, the February 19, 2004, e-mail to Scott Barr, Tony Delgado, Merril Ott, Ron Rose,

---

[19]Ct. Rec. 71, p. 3.

[20]Ct. Rec. 62, Ex. 5, p. 114 (emphasis added).  The Court notes that in his Declaration, Plaintiff takes the following position with regard to the July 24, 2003, meeting: *I was falsely accused of holding a "secret Advisory Group meeting" on July 24, 2003.  In reality, after I had been reassigned to duties other than the TMDL project, I attended a meeting of the Stevens County Cattlemen Association on my own time in the evening as a private citizen.*  (Pl. Dec. p. 8).

[21]Ct. Rec. 62, Ex. 2, p. 38.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14**

1  and Wes McCart included what appears to be an official announcement from the

2  Department of Ecology regarding the Colville River Fecal Coliform Advisory

3  Meeting.[22]  Plaintiff's unsupported assertions that the TMDL Advisory Group

4  ceased to meet after October 2002 is belied by the record, given the fact that

5  Plaintiff continued to refer to and communicate with the Advisory Group after

6  October 2002.

7         Another example of inconsistencies in Plaintiff's pleadings is Plaintiff's

8  explanation regarding the visit to Ron Rose's off-stream project.  In his

9  Declaration,  Plaintiff declares that he visited the Rose site on his lunch hour and

10  did so as a private citizen (Pl. Dec. p. 8).  Yet, in his response to the March 22,

11  2004, disciplinary letter, Plaintiff states that he visited the site as part of his

12  Ecology duties (Ct. Rec. 62, p. 116) ("*Ron began this project before any TMDL*

13  *activities in the watershed, and yet I was doing the job I started and that was to*

14  *monitor up and downstream before and after completion of this project*.").

15         To the extent that a later version or explanation of an event is inconsistent

16  with documents that were created more contemporaneously with the event, the

17  Court will discount the later version or explanation of the event.

18         Second, the e-mails sent by Plaintiff are peppered with disparaging

19  comments regarding his colleagues at the Department of Ecology and the SCCD

20  staff.  The tone of the e-mails indicates that Plaintiff's complaint regarding the

21  Department of Ecology and the SCCD went beyond a professional concern about

22  the watershed of the Colville River, and carried over into a personal grudge against

23  the Department of Ecology and the SCCD.  *See* Ct. Rec. 62, Ex. 4, pp. 7, 75, 84,

24

25         [22]The announcement indicated that "[t]he advisory group will continue work

26  on a monitoring plan to be incorporated into the implementation plan, give updates

27  from past meetings, and hear a couple of presentations about the water cleanup

28  plan process."  (Ct. Rec. 62, Ex. 3, p. 86).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT ~ 15**

99.

These negative remarks regarding Plaintiff's colleagues are not protected speech. They do not address matters of public concern; instead, they are reflective of an internal employment dispute and personal animus on the part of Plaintiff toward his co-workers.

Third, the analysis is somewhat complicated by Plaintiff's relationship to the TMDL Advisory Group, one of the groups that Plaintiff maintains he was excluded from associating with by the Department of Ecology. The TMDL Advisory Group did not have an existence outside the Department of Ecology. It did not have an independent agenda outside of assisting the Department of Ecology. Also, it does not appear that membership on the Advisory Group was open-ended; rather, it was formed through some sort of invitation process. Consequently, Plaintiff did not have a First Amendment right to insist on continuing to be a member of this group after his employer determined that his participation would no longer be beneficial to the group, since it was his employer who formed the group. Put another way, the TMDL Advisory Group was a creature of the Department of Ecology's TMDL process. Consequently, Plaintiff's First Amendment interests in associating with this particular group would be minimal, at best.

Finally, there is no First Amendment protections for speech made as a citizen on matters of private interest. Thus, to the extent the employer has disciplined an employee based on this type of speech, there would be no First Amendment violation. *See Connick*, 461 U.S. at 147 (holding that an employee's speech upon matters only of personal interest are not afforded constitutional protections).

In his Supplement Briefing, Plaintiff listed specific instances in which he engaged in protected speech. The Supplemental Briefing cited directly to Plaintiff's Declaration and his Statement of Facts, which was not necessarily

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16**

helpful to the Court in identifying the alleged protected speech.  In some instances, the referenced speech did not involve Plaintiff's speech, but referred to speech made by others regarding Plaintiff's speech.  In others, Plaintiff made generalized references to speech, but did not indicate the content, context, or the time frame of the speech.  As such, the analysis of alleged protected speech identified in Plaintiff's Supplemental Briefing does not provide much insight into whether Plaintiff was speaking as a citizen on a matter of public concern, or whether he was speaking pursuant to his official duties.

On the other hand, analyzing the specifically identified speech referred to in the disciplinary letters, for the most part, provides the content, context, and time frame for the speech and allows for a more meaningful review.   The Court has reviewed the e-mails referred to in the disciplinary letters and finds that the majority of the e-mails are not protected speech.  The Court finds that the following e-mails were speech made pursuant to Plaintiff's official duties, and therefore not protected by the First Amendment:

1.  May 20, 2003, e-mail to James Bellatty in which Plaintiff is critical of EPA addendum.[23]
2.  May 9, 2003, e-mail to Laurie Mann of the EPA, discussing changes to the final report.[24]
3.  May 16, 2003, letter to Interested Parties announcing EPA approval of SIS; May 20, 2003, letter to Interested Parties announcing EPA approval of SIS.[25]
4.  May 15, 2003, e-mail to Laurie Mann of the EPA, discussing changes to the final report, stating that submittal report is not correct.[26]
5.  July 16, 2003, letter to the Advisory Group members setting up the July 24, 2003, meeting.[27]

---

[23]Ct. Rec. 62, Ex. 1, p. 11

[24]Ct. Rec. 62, Ex. 1, p. 16.

[25]Ct. Rec. 62, Ex. 1, pp. 19-20.

[26]Ct. Rec. 62, Ex. 1, p. 22.

[27]Ct. Rec. 62, Ex. 2, p. 38.

6.    The July 24, 2003, meeting.[28]
7.    July 25, 2003, e-mail to Department of Ecology's Chief Financial Officer accusing misappropriation of grant funds by his supervisor and the SCCD.[29]
8.    September 29, 2003, e-mail to Nancy Stevenson, Ecology Chief Financial Officer inquiring about the status of the grant.[30]
9.    February 12, 2004, e-mail to Diane Crawford, consultant for the Colville River Watershed Planning Union, including attachments regarding the TMLD SIS.[31]
10.   February 23, 2004, e-mail to Laurie Mann of the EPA, including attachments regarding the TMDL and grant.[32]

The Court finds that the following e-mails were speech made pursuant to Plaintiff's official duties and additionally did not address matters of public

---

[28]The Court finds that, notwithstanding Plaintiff's Declaration, Plaintiff's statement in response to the March 22, 2004, disciplinary letter is accurate. Plaintiff admitted that he met with the Advisory Committee group.  Although Plaintiff had been relieved of his duties in relationship to the TMDL by that time, it appears that he continued to act as an Ecology employee.  Specifically, he stated that he reviewed the Ecology regulations and provided information and guidance to the group with respect to Ecology's position.  Even if Plaintiff attended the meeting as a citizen, it was not apparent to Defendants that this was the case.  In his response to the March 22, 2004, disciplinary letter, Plaintiff never indicated that he attended the meeting as a citizen. *See Waters v. Churchill*, 511 U.S. 661, 677 (1994) (holding that the employer is permitted to view the speech from the perspective of what the employer reasonably found them to be).  The Court finds that it was reasonable for Defendants to conclude that Plaintiff attended the meeting pursuant to his official duties, and was justified in disciplining Plaintiff for violating its directive to not meet with the Advisory Group at this time.

[29]Ct. Rec. 62, Ex. 2, p. 47.

[30]Ct. Rec. 62, Ex. 2, p. 46.

[31]Ct. Rec. 62, Ex. 3, p. 77.

[32]Ct. Rec. 62, Ex. 3, p. 97.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18**

concern.

    1.      July 30, 2003, site visit to Ron Rose's off-stream project.
    2.      February 2, 2004, e-mail to Ron Rose.[33]
    3.      February 3, 2004, e-mail to Ron Rose, Merrill Ott, and Scott Barr.[34]
    4.      February 12, 2004, e-mail to Ron Rose regarding meeting with Ecology.[35]
    5.      February 17, 2004, e-mail to Ron Rose and Merrill Ott.[36]
    6.      February 19, 2004, e-mail to Wes McCart[37].
    7.      February 19, 2004, e-mail to Ron Rose.[38]
    8.      February 19, 2004, e-mail to Scott Barr, Tony Delgado, Merritt Ott, Ron Rose, and Wes McCart.[39]
    9.      February 20, 2004, e-mail to Ron Rose, Merrill Ott, Scott Barr, Tony Delgado, and Wes McCart regarding watershed resources, watershed planning, and the TMDL.[40]
    10.    February 20, 2004, e-mail to Ron Rose regarding e-mail to Laurie

---

[33]Ct. Rec. 62, Ex. 3, p. 70.

[34]Ct. Rec. 62, Ex. 3, p. 72. The text of the email refers to Plaintiff's co-worker Karin Baldwin. The Court finds that the text of the email does not refer to matters of a public concern.  On the other hand, the Court finds that the document attached to the email marginally refers to matters of public concern, but more accurately can be characterized as reflecting Plaintiff's personal interest in seeing that the TMDL process is disrupted and Plaintiff's personal grudge against his employer.  *See Alpha Energy Savers, Inc,* 381 F.3d at 925 (holding that in close calls, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest weighs in favor of concluding that the statement does not substantially involve a matter of public concern).

[35]Ct. Rec. 62, Ex. 3, p. 75.

[36]Ct. Rec. 62, Ex. 3, p. 79.

[37]Ct. Rec. 62, Ex. 3, p. 82.

[38]Ct. Rec. 62, Ex. 3, p. 84.

[39]Ct. Rec. 62, Ex. 3, p. 86.

[40]Ct. Rec. 62, Ex. 3, p. 91.  *See Alpha Energy Savers, Inc,* 381 F.3d at 925.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19**

Mann to arrange a confidential meeting with the TDML advisory group.[41]

11. February 26, 2004, e-mail to Ron Rose criticizing the Department of Ecology and relaying information a co-worker overheard while working at the Department of Ecology.[42]

12. February 27, 2004, e-mail to Ron Rose .[43]

The following e-mails and visits were referred to by Defendants in generalized terms:

meeting with Matt Shanz; conversation with Merritt Ott prior to September 3, 2003; September 2, 2003, e-mail sent to Matt Shanz and Jim Matsuyama; meeting with Advisory Group members Ron Rose, Len McErvin, Ted Weshawn, and Tony Delgado; an e-mail sent to Delgado, and an e-mail sent on August 29, 2003.[44]

The Court cannot determine the content of the e-mail, or time and manner in which the speech was made because the referenced e-mails were not attached to the disciplinary letter. In his Declaration, Plaintiff insists that the speech was made as a citizen from his home after work hours.[45] In his response to the March 22, 2004, disciplinary proceedings, Plaintiff either did not respond to the allegations, or indicated that he spoke to the parties regarding the altered TMDL Report. Throughout the disciplinary proceedings, Plaintiff never once indicated to his employer that at the time he made the alleged speech he was speaking as a citizen and not as a Department of Ecology employee.

The Court is able to make a determination regarding the referenced August 29, 2003, e-mail. Attached to the Declaration of James Bellatty is an e-mail from Plaintiff addressed to Jerry Cline, Brian Crossley, Matt Schanz, Tony Delgado,

---

[41]Ct. Rec. 62, Ex. 3, p. 95.

[42]Ct. Rec. 62, Ex.3, p. 97. *See Alpha Energy Savers, Inc.*, 381 F.3d at 925.

[43]Ct. Rec. 62, Ex. 3, p. 102.

[44]Ct. Rec. 62, Ex. 3, p. 53-54.

[45]Ct. Rec. 50, p. 8-9.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 20**

1  Scott Barr, and Merrill Ott, dated August 29, 2003.[46]  The e-mail was sent from
2  Plaintiff's Ecology account ("demu461@ecy.wa.gov").

3       With respect to the August 29, 2003, e-mail, the Court finds that Plaintiff's
4  speech is more indicative of Plaintiff's private interest or grudge against the
5  Department of Ecology and SCCD and a complaint about the change to Plaintiff's
6  duties than expressing issues of public concern.  As such, the August 29, 2003, e-
7  mail is not protected speech.

8       The Court cannot determine, however, that the rest of the alleged speech
9  identified by Defendant was made pursuant to his official duties, or that it did not
10  address matters of public concern.  Also, it is clear that the alleged speech was, at
11  the minimum, a factor in the adverse employment decision, since it was referred to
12  in the disciplinary letters.  For purposes of the summary judgment motions, then,
13  the Court views these remaining incidents as protected speech.

14                        **iii.    Conclusion**

15       In reviewing the speech that was the basis for the disciplinary proceedings,
16  the majority of the speech was either made pursuant to Plaintiff's official duties, or
17  did not refer to matters of public concern.  Although there were some alleged
18  speech where the speech may have referred to matters of public concern, the record
19  supports a conclusion that the majority of the times that Plaintiff was
20  communicating with certain members of the TMDL Advisory Committee or the
21  EPA, it was to support Plaintiff's personal interest in seeing that his agenda or
22  views would be accepted and that the Department of Ecology's views rejected by
23  the Committee.   The Court concludes that the majority of the speech identified in
24  the disciplinary letters was not protected speech.  As such, Defendants were free to
25  rely on the unprotected speech in their disciplinary proceedings without running a
26  foul of the First Amendment.

27

28       [46]Ct. Rec. 59, Ex. 5, p. 18.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 21**

The Court notes that it is Plaintiff's position that *all* of the speech set forth above was made as a citizen on matters of public concern. As shown above, this is an exaggeration at best, and is not supported by the record. The Court also notes that there are inconsistencies in Plaintiff's submissions to the Court. These all weigh in favor of the Court finding that Plaintiff's purpose in sending the e-mails and communications with the Advisory Committee was to support his personal campaign and grudge against his employer. Most notable is the fact that Plaintiff received a two-week suspension in January 2004. Plaintiff returned to the job on February 2, 2004, and immediately began communicating with members of the TMDL Advisory Group during working hours. *See e.g.,* Ct. Rec. 62, Ex. 4, p. 70. In this e-mail, Plaintiff wrote disparaging remarks about his colleagues and SCCD.

Even so, the Court cannot conclusively say that Plaintiff never engaged in protected speech, especially in relationship to Defendant's general allegations regarding the communications that took place in August 2003. Thus, it is necessary to proceed further and conduct the *Pickering* balancing test and, in the alternative, the *Mt. Healthy* mixed-motive analysis.

### b.    *Pickering* Balancing Test

The disciplinary proceedings provide a complete picture for the Court to conduct the *Pickering* balancing test. In conducting this test, the Court looks at those incidents involving protected speech and asks whether the Department of Ecology has shown that its interest in the effective and efficient fulfillment of its responsibilities to the public outweighs Plaintiff's First Amendment free speech rights to justify any disciplinary actions taken as a result of Plaintiff's speech.

In this case, the protected speech at issue is as follows: the meeting with Matt Shanz of Tri-County Health; the conversation with Merritt Ott, prior to September 3, 2003; the September 2, 2003, e-mail sent to Matt Shanz and Jim Matsuyama; the meeting with Advisory Group members Ron Rose, Len McErvin,

Ted Weshawn, and Tony Delgado; and the e-mail sent to Delgado.[47]

Defendants referenced this speech in the disciplinary process; however, the protected speech represented only a fraction of the total conduct and speech that was relied upon by Defendants. Plaintiff's non-protected conduct and speech provided ample support to justify Plaintiff's discipline and termination.

Plaintiff was continually attempting to undermine the TDML process. The process was not complete and the Department of Ecology had a significant interest is seeing that Phase Three of the process was completed. In her Declaration, Polly Zehm made the following observation:

> I found the disrespectful, sarcastic and accusatory tone of special concern; given that it was directed at Murrays' current Ecology co-workers (especially Karin Baldwin) and agency partners that we depend on to develop collaborative relationships with to accomplish very challenging environmental work. This is very damaging to the integrity of the agency and our ability to carry out our environmental mission. It damages our reputation in the community and causes confusion. Murrays' communications in 2004 are among the most blatantly unprofessional behavior I've ever known of by an Ecology employee. The agency simply cannot function effectively if employees are allowed to undermine its work and decisions every step of the way. We didn't ask Murray to keep working on something he couldn't support. We assigned him different job duties so he could be a productive employee with meaningful work to do.[48]

On the other hand, the Court finds that Plaintiff's First Amendment interests in communicating his views regarding the TDML process in the manner in which he did was minimal at best. Plaintiff's communications were with a few select persons—many of the e-mails were sent to only Ron Rose—and the speech was not presented in a public forum. The only time he attempted to communicate with the entire TMDL Advisory Group regarding his concerns over the amended TMDL plan was in the July 16, 2003, letter that was written pursuant to his official duties. The Court finds that Defendants' interest in the effective and efficient fulfillment

---

[47]Ct. Rec. 62, Ex. 3, p. 53-54.

[48]Ct. Rec. 62, p. 6-7.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23**

1    of its responsibilities to the public significantly out weigh Plaintiff's First

2    Amendment free speech rights.  As such, Plaintiff's First Amendment free speech

3    claim fails as a matter of law.

4            **c.**    ***Mt. Healthy* Mixed-Motive Test**

5          In the alternative, Defendants can justify Plaintiff's discipline and

6    termination if they can show that they would have reached the same decision even

7    in the absence of employee's protected speech. *Mt. Healthy*, 429 U.S. at 287.  In

8    reviewing the listed incidents and alleged speech that provided the basis for

9    Plaintiff's termination, the Court notes that in most instances, protected speech was

10   not at issue, and as such, would provide an adequate basis for the termination.

11   Indeed, Plaintiff was given more than one chances to succeed at the Department of

12   Ecology.  Defendants instituted three separate and progressive disciplinary

13   proceedings to address the problems identified by the Department of Ecology.

14   Plaintiff's response to the directives resulting from the disciplinary proceedings

15   was not appropriate.  Although told to do so,  Plaintiff refused to provide copies of

16   his correspondences and e-mails to his supervisors, and did  not refrain from

17   making disparaging comments about his co-workers.[49]  By the time May 2004

18   disciplinary hearing,  Defendants concluded that they were out of options and had

19   no choice but to terminate a disgruntled employee that was undermining the

20   mission of the Department of Ecology.  The record supports this conclusion.

21

22         [49]Plaintiff contests that he was terminated for neglect of duty,

23   insubordination, gross misconduct, wilful violation of Ecology and personnel rules

24   and regulations and he denies that he violated Ecology and personnel rules or the

25   code of conduct.  The Court notes that in the May 12, 2004, termination letter,

26   Plaintiff was advised that he could appeal his termination with the Washington

27   State Personnel Appeals Board.  There is nothing in the record to indicate whether

28   Plaintiff appealed his termination to the Board.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 24**

1    The Court finds that Defendants have met their burden of showing that it

2    would have reached the same decision even in the absence of Plaintiff's protected

3    speech.

4              **3.    Prior Restraint**

5     In his complaint, Plaintiff alleges that Defendants exercised prior restraint

6    against him when they refused to allow him to speak out about issues which

7    concerned the public.  Plaintiff alleges that the prior restraints were overbroad and

8    excluded him from public meetings, cut him off from all contacts with two of his

9    county commissioners, and monitored and regulated his speech regarding the

10   SCCD.

11   The Supreme Court analyzed a prior restraint claim in *United States v.*

12   *National Treasury Employees Union*, 513 U.S. 454 (1995).  In order to justify the

13   restraint, the Supreme Court applied the *Pickering* test.  *Id.* at 465-66.  Because the

14   restraint had the potential to chill speech before it happens, the Supreme Court

15   imposed a significant burden on the Government to show that "the interests of both

16   potential audiences and a vast group of present and future employees in a broad

17   range of present and future expression are outweighed by that expression's

18   'necessary impact on the actual operation' of the Government."  *Id.*

19   Here, Plaintiff's claim that he was cut off from all contact with two of his

20   county commissioners and that he was excluded from public meetings  exaggerates

21   the prior restraints that were imposed upon him by Defendants.  Plaintiff was

22   precluded from speaking to the commissioners, who happen to be members of the

23   Advisory Group, on the issue of the TDML.  Likewise, Plaintiff was precluded

24   from attending the public meetings of the SCCD and the Department of Ecology's

25   meetings with the TDML Advisory Group.  He was not precluded from attending

26   other meetings, or speaking about issues outside of the TDML process or the

27   SCCD grant process.

28

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 25**

Notwithstanding this, the Court agrees that Defendants did restrain Plaintiff's speech, but finds that they did so only with respect to speech that Plaintiff would be making pursuant to his official duties as a Department of Ecology employee. As such, the restraint meets constitutional muster.

Moreover, the Court finds that with regard to any restraints placed on Plaintiff's speech by Defendants, Defendants' interest in the effective and efficient fulfillment of its responsibilities to the public outweigh Plaintiff's First Amendment rights. The restraints were not over broad and were tailored to meet the Department of Ecology's directives.

Plaintiff's interpretation that the directives applied to all speech, including speech made as a citizen is not reasonable. Plaintiff never requested clarification of the directive. In his response to Defendants' disciplinary letter, Plaintiff questioned the rationale behind the directive and asked why he could not have contact with the Advisory Group, but he never indicated that he considered the directive to be a total gag order on all of his speech. Plaintiff never asked if he could converse with the Advisory Group members as a citizen, nor did he ask whether he could attend the SCCD public meetings as a citizen, and the Court notes that he had many opportunities to do so.

## C.    Qualified Immunity

Defendants argue that even if Plaintiff engaged in protected speech, the individually-named Defendants are entitled to qualified immunity. The Court agrees that even if this Court was in err in holding that Plaintiff did not engage in protected speech, and that Defendant's interest in the effective and efficient fulfillment of its responsibilities to the public outweigh Plaintiff's First Amendment rights, the individually-named Defendants are entitled to qualified immunity.

In determining whether Defendants are afforded qualified immunity, the

Court must first consider whether a constitutional right was violated by Defendants. *Dible v. City of Chandler*, 502 F.3d 1040, 1050 (9th Cir. 2007) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). If not, the inquiry ends and Defendants are entitled to qualified immunity. *Id.* If a constitutional right was violated, the Court must determine whether that right was clearly established. *Id.*

In *Dible*, the Ninth Circuit made the following observation that even where a plaintiff's constitutional rights were violated, "whether a public employee's speech is constitutionally protected turns on a context-intensive, case-by-case balancing analysis, [and] the law regarding such claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity." *Id.* This is especially true in this case where there were over 30 incidents of alleged speech this Court had to review in order to determine whether Plaintiff was engaged in protected speech. Also, it is especially true here because Plaintiff was given numerous opportunities to notify Defendants that he was speaking as a citizen, and not as an Ecology employee. Plaintiff never even hinted to Defendants that this was his intention. It was only after he filed this lawsuit did he maintain that at all times in question, he was speaking as a citizen on a matter of public concern when he was sending e-mails to and meeting with members of the TMDL Advisory Group. Here, it was not clearly established that Defendant would be violating Plaintiff's constitutional rights by disciplining and terminating him as a result of his speech. Thus, the individually-named Defendants are entitled to qualified immunity.

**2.    Remaining State Claims**

In addition to his federal claim, Plaintiff alleged three state claims: (1) a Public Records Act claim; (2) retaliation and wrongful discharge in violation of public policy; and (3) negligent infliction of emotional distress. In their motion, Defendants assert that the public records act claim should be dismissed because the claim is barred by the Eleventh Amendment. Plaintiffs agree. Thus, Plaintiff's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 27**

1  state law Public Records Act claim is dismissed.

2     Because the Court has granted summary judgment with respect to all federal

3  claims, the Court declines to extend supplemental jurisdiction to the remaining

4  state claims.  Therefore, the state claims are dismissed without prejudice.  *See* 28

5  U.S.C. § 1367(c); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7

6  (1988) ("in the usual case in which all federal-law claims are eliminated before

7  trial, the balance of factors to be considered under the pendent jurisdiction

8  doctrine— judicial economy, convenience, fairness, and comity—will point toward

9  declining to exercise jurisdiction over the remaining state-law claims."); *United*

10  *Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

11  **3.    Plaintiff's Motion to Strike**

12     Plaintiff argues that Defendants raised arguments for the first time in their

13  reply.  Specifically, Plaintiff asserts that Defendants argued that Plaintiff's speech

14  interfered with the performance of his own duties.  Plaintiff contends that this

15  factual assertion was not listed as a material fact.  Additionally, Plaintiff asserts

16  that Defendant argued for the first time in their reply that the Court should decline

17  to exercise jurisdiction over Plaintiff's state law claims.

18     The Court has discretion to decline to exercise supplemental jurisdiction *sua*

19  *sponte*.  The issue of Plaintiff's job performance is a factor applicable to the

20  *Pickering* balancing test and is properly before the Court. Thus, it is not necessary

21  to strike Defendants' pleadings.

22     Accordingly, **IT IS HEREBY ORDERED**:

23     1.    Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 48) is

24  **DENIED**.

25     2.    Defendants' Motion for Partial Summary Judgment (Ct. Rec. 54) is

26  **GRANTED**.

27

28

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 28**

3.      Plaintiff's Motion to Strike (Ct. Rec. 80) is **DENIED**.

4.      The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff on Plaintiff's First Amendment claims.

5.      The state law claims are **dismissed** without prejudice.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 19th day of February, 2008.

*S/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Murray\sj2.ord.wpd

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 29**